IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

OZELIA HICKS JR.,

    Petitioner,

v.                                              Civil Action No. 3:15CV123

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Ozelia Hicks, Jr., a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF No. 7) challenging his conviction in the Circuit Court of Chesterfield County, Virginia (hereinafter, "Circuit Court") for obtaining money by false pretenses. Respondent has moved to dismiss. For the reasons set forth below, the Motion to Dismiss will be GRANTED.

### I. Procedural History

Following a jury trial, Hicks was found guilty of obtaining money by false pretenses. *Commonwealth v. Hicks*, No. CR11F02282-01, at 1 (Va. Cir. Ct. Dec. 11, 2012). The Circuit Court sentenced Hicks to seven (7) years of imprisonment. *Id.* Hicks appealed.

Before the Court of Appeals of Virginia, Hicks raised the following grounds for relief: (1) "the trial court erred in allowing the Commonwealth's attorney to instruct the jury that they could impose a suspended sentence and to allow the jury to continue to deliberate and sentence him after the Commonwealth's attorney's statement," *Hicks v. Commonwealth*, No. 0357-13-2, at 1 (Va. Ct. App. July 25, 2013); (2) "the trial court erred in allowing the jury to consider factually incorrect information regarding his criminal history," *id.* at 2; (3) "the evidence was insufficient to prove the elements of obtaining money by false pretenses," *id.* at 3; and, (4) "the

trial court abused its discretion in sentencing appellant to twelve times the recommended sentence of the sentencing guidelines," *id.* at 5. The Court of Appeals of Virginia found that Hicks failed to preserve the first two issues for appeal and that Hicks's last two claims lacked merit. *Id.* at 2-3, 5-6. Thereafter, the Supreme Court of Virginia dismissed Hicks's petition for appeal with respect to Hicks's first two assignments of error and refused the petition for appeal with respect to the last two assignments of error. *Hicks v. Commonwealth*, at 1, No. 131734 (Va. Apr. 4, 2014).

Subsequently, Hicks filed a petition for a writ of habeas corpus with the Circuit Court, which was denied by the Circuit Court on June 10, 2014. *Hicks v. Commonwealth*, No. CL14HC-416, at 12 (Va. Cir. Ct. June 10, 2014). Hicks appealed, and the Supreme Court of Virginia denied his appeal. *Hicks v. Clarke*, No. 141221, at 1 (Va. Feb. 6, 2015).

In his § 2254 Petition, Hicks's statement of his grounds for relief is far from lucid. For example, Hicks states:[1]

> Trial attorney failure properly to preserve the error at trial and material, which would have been reversed on direct appeal. Sup. Ct. Rules, Rule 5A:18; Stephen Armstrong failed to apply the contemporaneous objection rule on direct appeal. Appeal attorney failed to raise this issue and the rules exception in order to attain the ends of justice. Commonwealth failed to prove an essential element of the offense intent to defraud . . . .

(§ 2254 Pet. 6.)[2] In his Response to Respondent's Motion to Dismiss, Hicks provides a much more coherent statement for some of his claims. ("Response," ECF No. 17.) Accordingly, the Court utilizes Hicks's description of his first three grounds for relief found in his Response.

---

[1] The Court corrects the capitalization, punctuation, and spelling in the quotations from Hicks's submissions.

[2] The Court employs the pagination assigned to the parties' submissions by the Court's CM/ECF docketing system.

| | |
|---|---|
| Claim One | "The evidence was insufficient to support conviction." (*Id.* at 11.) |
| Claim Two | "The Commonwealth's Attorney committed misconduct introducing perjured testimony at Petitioner's trial. (State Habeas 14b)." (*Id.*) |
| Claim Three | "The Commonwealth Attorney violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and committed misconduct by withholding a Western Union Receipt showing the exact date and time [of] events charged by the Commonwealth." (*Id.* at 12 (emphasis added).) |
| Claim Four | Hicks failed to receive the effective assistance of counsel because:<br>(a) trial counsel failed to object in a timely manner to inaccurate information regarding Hicks's criminal history that was presented to the jury at sentencing, (§ 2254 Pet. 16–17);<br>(b) trial counsel failed to object to an erroneous comment the prosecutor made with respect to imposing a suspended sentence, (*id.* at 16);[3] and,<br>(c) trial and appellate counsel failed to pursue State Habeas Claims 14(A), 14(B), 14(C), and 14(D)(10). (§ 2254 Pet. 20.) |

For the reasons set forth below, the Court finds that Claims Two and Three are procedurally defaulted and that the remaining claims lack merit.

## II. Exhaustion And Procedural Default

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal-state comity'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838,

---

[3] In Claim Four (b), Hicks faults counsel for "[f]ailing to timely object to [an] erroneous jury instruction by the Assistant Commonwealth Attorney." (§ 2254 Pet. 16.)

3

844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires that a petitioner offer the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles'" must be presented to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994-95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, on state habeas, the Circuit Court found that Hicks procedurally defaulted Claim Two pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Hicks could have, but failed to raise, this claim at trial and on direct appeal. *Hicks v. Commonwealth*, No. CL14HC-416, at 4-5 (Va. Cir. Ct. June 10, 2014) (citing *Slayton*, 205 S.E.2d 682). *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196-97 (4th Cir. 1997). Thus, Hicks has procedurally defaulted Claim Two.

Similarly, Hicks failed to properly raise Claim Three in his state proceedings. If he now attempted to present Claim Three to the Virginia courts, they would find it barred under the rule in *Slayton*. *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Accordingly, Claims Two and Three are defaulted unless Hicks demonstrates (1) cause and prejudice to excuse his default or (2) his actual innocence. Hicks suggests that the ineffective assistance of counsel constitutes cause which excuses his default of Claim Two. That suggestion lacks merit for the reasons set forth below. *See infra* Part V.

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).

### III. The Applicable Constraints Upon Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### IV. Sufficiency Of The Evidence

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).[5] The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

> The Court of Appeals of Virginia aptly explained the abundant evidence of Hicks's guilt:

> [T]he evidence proved that Sharean Chavez responded to an internet advertisement for the rental of a house located on Holden Road and she met appellant at the house on April 25, 2011. Chavez testified appellant stated that he was living in the house and that he was building another house in a nearby neighborhood. Chavez testified they discussed a move-in date to correlate with the completion of appellant's new house. Chavez testified the deposit for the house was $850, but she did not have the entire amount and appellant agreed to take $350 that day and the balance of $500 on April 29, 2011. Chavez testified appellant stated that once he received the entire deposit, he would stop advertising the house. Chavez paid appellant the balance of the deposit on April 29, 2011. Chavez testified appellant agreed to a move-in date of July 1, 2011. Chavez testified after April 29, 2011, she called appellant once a week to confirm that July 1, 2011 was the move-in date and to discuss certain modifications to the house due to the special needs of her child. Chavez testified she asked appellant in mid-June if she could start to move items into the house on June 27, 2011 and appellant agreed. Chavez testified on approximately June 22, 2011, she called appellant to confirm the move-in date, appellant told her that he was having problems with his house in Georgia and that he was not sure when he could move into the house in Georgia and be out of the house in Virginia. Chavez testified appellant offered five other rental properties to her. Chavez testified she told appellant she was not interested in the other rental properties and she asked appellant to return her deposit. Chavez testified she called appellant several times, but he did not answer and did not call her back. Chavez testified she went to the Holden Road house and spoke to [a] woman outside the house. Chavez testified appellant represented that he was a real estate agent. At some point, appellant repaid Chavez $200 and eventually repaid Chavez the balance after a court proceeding.

---

[5] In order to prove larceny by false pretenses, the prosecution is required to prove:

> "(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses used for the purpose, that is, the false pretenses to some degree must have induced the owner to part with his property."

*Riegert v. Commonwealth.*, 237 S.E.2d 803, 807 (Va. 1977) (quoting *Bourgeois v. Commonwealth*, 227 S.E.2d 714, 717 (1976)).

7

> Rosetta Stokes testified she met with appellant on April 30, 2011 at the Holden Road house and she discussed with appellant about renting the house or entering into a lease-purchase for the house. Stokes testified appellant stated that he was moving to Florida. Stokes testified she signed a lease-purchase agreement for the house, gave appellant a $5,000 deposit on May 21, 2011, and moved in on May 21, 2011. Stokes testified appellant mentioned Chavez's interest in the property, but stated that Chavez could not afford the property. Stokes testified appellant represented that he was a real estate agent.
> Detective Daniel Bernaldo testified appellant admitted he did not keep Chavez's deposit money separate from his personal funds and admitted he was not a real estate agent.
> The jury evaluated the testimony of the witnesses and determined that appellant intended to defraud Chavez when she paid him the deposit. Chavez paid the balance of the deposit to appellant on April 25, 2011 with a move-in date of July 1, 2011. Appellant signed a lease purchase agreement with Stokes on May 21, 2011. Between April 25 and the end of June, appellant continued to tell Chavez that she could move into the house on July 1, 2011. After appellant entered into a lease-purchase agreement with Stokes and after Stokes moved into the house, appellant continued to tell Chavez that she could move into the house on July 1, 2011. Appellant told Chavez that he was building a new house nearby, but later told her that he was moving to Georgia and he told Stokes that he was moving to Florida. Appellant failed to keep Chavez's deposit money separate from his personal funds and falsely represented to Chavez that he was a real estate agent. Based upon a review of the circumstances, there was sufficient evidence supporting the jury's decision.

*Hicks v. Commonwealth*, No. 0357-13-2, at 4-5 (Va. Ct. App. July 25, 2013).

While Hicks continues to insist that his actions were innocent, as reflected above, ample evidence supported his intent to defraud Chavez out of her security deposit, without providing her with a home. Accordingly, Claim One will be DISMISSED.

### V. Purported Ineffective Assistance Of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting

8

*Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In Claim Four (a), Hicks faults counsel for failing to object in a timely manner to inaccurate information regarding Hicks's criminal history that was presented to the jury at sentencing. In rejecting this claim for failing to demonstrate deficiency or prejudice, the Circuit Court found:

> On appeal, petitioner complained the trial court erred in allowing the jury to consider factually incorrect information regarding his criminal history. The Court of Appeals found:
>
>> During the sentencing phase, the prosecutor moved to admit attested copies of [petitioner]'s prior convictions obtained through the NCIC database. Defense counsel stated that he had seen the copies and there was "nothing objectionable." During deliberations, the jury sent a note because it noticed that some of the conviction orders contained a name different from [petitioner]'s name. Defense counsel stated that [petitioner] just informed him that some of the convictions were his brother's convictions. Defense counsel admitted the prosecutor gave him a copy of the conviction orders prior to trial, he reviewed [petitioner]'s criminal history with [petitioner] prior to trial, and he showed [petitioner] the conviction orders on the morning of trial. Under oath, [petitioner] admitted that nine of the convictions were his, but that three of the convictions were not his. The trial judge stated that he would inform the jury not to consider the three convictions. In response defense counsel stated, "Judge, I can't think of any other way to do it better. I just ask the Court to instruct the jurors not consider those, that it appears it is disputed and potentially maybe was his brother."
>> * * *
>> Based upon a review of the circumstances, [petitioner] waived any objection to the admission into evidence of the

9

> conviction orders and he agreed to the trial judge's actions in remedying the situation.
>
> (Opinion at 2-3).
> The appellate court's findings demonstrate that petitioner's claims fails [sic] to proved [sic] deficient performance or prejudice under *Strickland*.
> Furthermore, in February, well in advance of petitioner's trial in August, the Commonwealth provided the defense with the history of criminal convictions the Commonwealth intended to introduce at the sentencing phase of trial. In July, petitioner conferred with counsel at counsel's office and was provided the Commonwealth's proposed exhibit. Petitioner read the exhibit, mumbled, "that ain't me," and threw the document on counsel's desk. When counsel inquired what petitioner meant, petitioner just shook his head; he did not elaborate or explain. He did not identify which convictions were not his. (Respondent's Exhibit A). Further, on the day of trial, counsel again provided petitioner the list of prior convictions the Commonwealth intended to introduce at sentencing. Petitioner did not inform counsel or make any indication that he had an issue with the convictions until after they were provided to the jury. (Tr. 199-200; Respondent's Exhibit A). Ultimately, out of the presence of the jury, petitioner disputed three of twelve prior convictions. Subsequently, the jury was instructed by the court not to consider those convictions when fixing punishment. (Tr. 196-97). The trial court gave a proper limiting instruction not to consider the three disputed convictions, (Tr. 215-16), which the jury is presumed to have followed. *Muhammad v. Commonwealth*, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005)

*Hicks v. Commonwealth*, No. CL14HC-416, at 7-8 (Va. Cir. Ct. June 10, 2014) (alterations in original).

It is unnecessary to evaluate counsel's performance because, given the Circuit Court's curative instructions, Hicks fails to demonstrate prejudice. *See Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation omitted) (internal quotation marks omitted) (observing that it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding"). Specifically, Hicks offers nothing to demonstrate that the jury was inclined to disregard the Circuit Court's instruction with respect to the convictions that were not attributed to Hicks. Indeed, the jury was attentive enough to notice in the first instance that some of the convictions submitted to them did not belong to Hicks. Given the above, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's

rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, Claim 4 (a) will be DISMISSED.

In Claim Four (b), Hicks faults counsel for "[f]ailing to timely object to [an] erroneous jury instruction by the Assistant Commonwealth Attorney." (§ 2254 Pet. 16.) Hicks represents that he raised this claim on state habeas. (*Id.*) Hicks appears to pursuing his claim that counsel acted deficiently by failing to raise a timely objection to the prosecutor's inappropriate remarks to the jury about imposing a suspended sentence. (Pet'r's Resp. 85-86.) On direct appeal, Hicks argued that "the trial court erred in allowing the Commonwealth's attorney to instruct the jury that they could impose a suspended sentence and to allow the jury to continue to deliberate and sentence him after the Commonwealth's attorney's statement." *Hicks v. Commonwealth*, No. 0357-13-2, at 1 (Va. Ct. App. July 25, 2013). The Court of Appeals of Virginia summarized the pertinent facts as follows:

> During closing argument of the penalty phase, without objection, the prosecutor stated:
>
>> I am asking for you to sentence him to the very least to a term of five years active incarceration in the penitentiary. I'm asking for you to sentence him to twenty years with fifteen years suspended for twenty years and I would ask for you to impose the sentence today.
>
> After deliberating for a period of time, the jury sent a note to the trial judge stating that consistent with the recommendation of the prosecutor, they fix appellant's punishment to twenty years, with fifteen years suspended, serving no less than five years in the penitentiary. The trial judge stated that prior to deliberations and after the prosecutor's statement, he started to tell the jury they had no authority to suspend a sentence, but he did not want to tell the jury too much, but he reminded the jury to follow the instructions, which had no provision regarding the suspension of a sentence. In response to the jury's note, the trial judge informed the jury that it was an error for the prosecutor to suggest a suspended sentence and to fix a sentence consistent with the instructions. The trial judge denied appellant's motion for a mistrial. Later, the jury fixed a sentence of seven years in the penitentiary.

> Appellant failed to object to the prosecutor's statement and he moved for a mistrial only after the jury sent a note to the trial judge. Appellant failed to timely object to the prosecutor's statement. The trial judge instructed the jury that it was an error for the prosecutor to request a suspension of a portion of the sentence and instructed the jury to impose a sentence consistent with the instructions. By failing to timely object, appellant waived his objection to any error regarding the prosecutor's statement.

*Id.* at 1-2.

Now, in Claim Four (b), Hicks insists that the result of his sentencing or appeal would have been different had counsel made a timely objection to the prosecutor's misstatement. That simply is not so. Rather, had counsel immediately objected, the Circuit Court would have promptly told the jury that it was error for the prosecutor to suggest that the jury could impose a suspended sentence. The Circuit Court provided such a strong curative instruction, albeit after the jury raised the issue of imposing a suspended sentence:

> [T]he last thing I told you when you went back to the jury room that your authority is to impose a sentence consistent with Instruction Three. There's nothing in there about suspending a sentence. You have no authority to do that and the Court does not allow you to do that.
> I know that [the prosecutor] . . . said something about that and after argument, I meant to tell you in direct terms and I told you in more indirect terms that you must follow this one instruction.
> You have no power to do that and you should not have been told that by counsel as a recommendation because you have no authority to do that.
> You must impose a specific sentence that does not include suspending the sentence or probation or anything such as that because you have no power to do that.
> So you are going to have to render [a] decision that is precise in amount of a fine up to $2,500, jail up to 12 months, penitentiary starting at one year and ending at 20.
> . . . .
> So that's all. There's nothing in here about suspended sentences and that should not have come out, but it did, but you have no authority to do that, so you have to impose a sentence based on what I told you.

(Aug. 20, 2012 Tr. 221-23.) Once again, given the strong curative instruction ultimately provided by the Circuit Court, Hicks fails to demonstrate that he was prejudiced by counsel's failure to make a timely objection. Accordingly, Claim Four (b) will be DISMISSED.

In Claim Four (c), Hicks faults trial and appellate counsel for failing to raise the claims that the Circuit Court found procedurally defaulted pursuant to *Slayton* on state habeas. (§ 2254 Pet. 20 (referencing "order June 10, 2014 page (4) defendant writ of habeas corpus claims 14(A), 14(B), 14(C), 14(D)[(10)] should have and could have been raise . . . on direct appeal"). The pertinent claims from Hicks's state habeas were as follows: Claim 14(A) "The charges against petitioner were false and illegal; the evidence against petitioner was insufficient as a matter of law"; Claim 14(B) "Witness Perjury: there was a discrepancy in the testimony about who petitioner met with or first interviewed for the lease purchase property at 5706 Holden Road. The dates of the meeting/interview conflicted"; Claim 14(C) "Witness Bias: Mrs. Stokes was biased against petitioner"; and Claim 14(D)(10) "the trial judge abused his discretion by allowing petitioner to be sentenced outside the sentencing guidelines when the jury sentenced petitioner without benefit of the information in the presentence report." *Hicks*, No. CL14HC-416, at 2-3. As explained below, Hicks fails to demonstrate that counsel performed deficiently or that he was prejudiced by counsel's failure to advance these frivolous claims.

With respect to Claim 14(A), Hicks fails to demonstrate that he was falsely charged or that the evidence was insufficient to support his conviction. Similarly, with respect to Claim 14(B), Hicks fails to demonstrate that any witness testified falsely, much less that the prosecutor knew the witness was testifying falsely.[6] Thus, counsel reasonably eschewed pursing Claims

---

[6] Hicks's true grievance appears to be that he disagrees with the version of events presented by the prosecution's witnesses. Although counsel informed Hicks that Hicks's testimony would be key to defending his case, Hicks steadfastly refused to testify. Motion to Dismiss Ex. A, at 2-3, *Hicks*, No. CL14HC-416 (Va. Cir. Ct. filed Apr. 7, 2014).

14(A) and 14(B).[7] Furthermore, the fact that a prosecution witness, Rosetta Stokes, did not like Hicks and the fact that the Circuit Court imposed a sentence outside the range of the recommended sentencing guidelines fail to provide a viable basis for a legal claim of relief. *Thinnes v. Dir., Va. Dep't of Corr.*, No. 3:05CV351, 2006 WL 763655, at *4 (E.D. Va. Mar. 24, 2006) ("Virginia law is clear, that regardless of the state sentencing guidelines, the trial judge has nearly unlimited discretion in imposing what he deems to be an appropriate sentence.") Thus, Hicks fails to demonstrate that counsel acted deficiently or that he was prejudiced by counsel's failure to pursue these claims. Accordingly, Claim Four (c) will be DISMISSED.

As previously noted, *see supra* Part II, Hicks asserts that the Court should excuse his default of Claim Three because counsel acted deficiently by failing to pursue Claim Three at trial and on appeal. In Claim Three, Hicks suggests that the prosecution suppressed a Western Union receipt that reflected that he had sent money to the victim, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* and its progeny "require[] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." *United States v. King*, 628 F.3d 693, 701 (4th Cir. 2011). However, as is the case here, "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990)). Thus, counsel reasonably declined to purse any alleged *Brady* violation with respect to the Western Union receipt, and Hicks fails to demonstrate cause to excuse his default of Claim Three.

---

[7] State Habeas Claim 14(B) is largely the same as Hicks's § 2254 Claim Two. As counsel reasonably declined to pursue a claim that the prosecution witnesses testified falsely, Hicks cannot demonstrate cause to excuse his default of Claim Two.

## VI. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 13) will be GRANTED. Hicks's claims will be DISMISSED, and his § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.

Hicks's Motion for Reconsideration for Appeal Bond (ECF No. 18) and his Motion for Writ of Mandamus (ECF No. 24), wherein he seeks to be released or to have an attorney appointed, will be DENIED.

Hicks also has filed a Motion to Correct the Record (ECF No. 27) wherein he asserts, *inter alia*, that the prosecutor misrepresented that Hicks refunded $200.00 of the $850.00 he owed to Ms. Chavez only after Ms. Chavez contacted the police. (Mot. Correct 1-3.) Ms. Chavez, however, swore that Hicks only issued the $200.00 refund after she contacted the police. (Aug. 20, 2012 Tr. 101-02.) Hicks insists that he made the partial refund on July 8, 2011. (Mot. Correct 2.) Hicks, however, fails to demonstrate that Ms. Chavez had no contact with the police prior to July 8, 2011. Accordingly, as the transcript contains an accurate reflection of the evidence presented in the Circuit Court, Hicks's Motion to Correct the Record (ECF No. 27) will be DENIED.

An appropriate Final Order shall issue.

It is so ORDERED.

/s/ *[signature]*
Roderick C. Young
United States Magistrate Judge

Date: March 3, 2016
Richmond, Virginia